# STATE v. ABE GINSBERG.[1]

April 1, 1926.

Nos. 25,428, 25,429.

**Indorsement of indictment by acting foreman of grand jury.**
1. In the absence of the foreman of a grand jury, the district court has the power to appoint a foreman pro tempore and indictments properly indorsed by a duly appointed acting foreman are not open to attack on that ground.

**When second indictment may be found while first is still pending.**
2. Except as required by statute, an order of resubmission is not a condition precedent to the reconsideration of a criminal charge by a grand jury and the finding of a second indictment thereon, even though the first is still pending.

**Second indictment may be found without additional evidence.**
3. The second indictment may be found without re-examination of the witnesses originally heard and without consideration of any new or additional evidence.

Grand Juries, 28 C. J. p. 784 n. 78, 78 New.
Indictments and Informations, 31 C. J. p. 598 n. 13; p. 601 n. 69; p. 621 n. 61; p. 622 n. 70, 79; p. 796 n. 30.

---

See note in 28 L. R. A. 324; 14 R. C. L. p. 160; 3 R. C. L. Supp. p. 186.

Two indictments were returned against defendant in a prosecution in the district court for Ramsey county for subornation of perjury. The indictments were sustained, Hanft, J. Certain questions referred to in the opinion were certified to this court. The questions are answered in the negative and the holding of the trial court sustained.

*Clifford L. Hilton,* Attorney General, *G. A. Youngquist,* Assistant Attorney General, *H. H. Peterson,* County Attorney, and *O. A. Blanchard,* Assistant County Attorney, for the state.

*McMeekin, Quinn & Swan* and *Davis & Michel,* for defendant.

[1]Reported in 208 N. W. 177.

STONE, J.

This prosecution for subornation of perjury is here upon the certification of certain questions arising as follows: October 13, 1925, two indictments were returned against defendant to which he demurred. The demurrers were overruled and the cases set for trial. But there was so much doubt about the first indictments that the county attorney, without any order of court, resubmitted the matter to the same grand jury which returned the original indictments. December 3, 1925, they returned the two new indictments now under examination. Before doing so they did not re-examine the witnesses or consider any new evidence. The names of the original witnesses were indorsed on the new indictments. They were challenged by motions to dismiss and also by demurrer. The motions were denied and the demurrers overruled. There was also a motion, which was denied, to strike certain portions of the new indictments. The three questions certified reduce themselves to this one: Is there any error in the action below on the new indictments?

It has not been asserted here that there was error in denying the motion to strike. The burden was upon defendant to make such error appear. He has not done so and the holding accordingly must be, and is, that the motion to strike was properly denied.

1. The first point for defendant is that both the indictments are fatally defective because alone of the fact that the "true bill" indorsements required by statute, G. S. 1923, § 10637, were not signed by the foreman of the grand jury, but by an "acting foreman."

The statute, section 10617, G. S. 1923, is that: "From the persons summoned to serve as grand jurors and appearing, the court shall appoint a foreman, and it shall also appoint a foreman whenever one already appointed shall be discharged or excused before such jury are dismissed." Section 10637 requires that 'an indictment when found "shall be indorsed 'a true bill,' and the indorsement signed by the foreman." Section 10638, provides that "whenever an indictment is found, it shall be immediately presented by the foreman, in the presence of the grand jury, to the court." These

are all procedural provisions and so far directory that substantial compliance with them, there being no other objection, puts an indictment beyond question. Were we to hold otherwise we would ignore the salutary provisions and obvious purpose of section 10648 that "no indictment shall be insufficient, nor shall the trial, judgment, or other proceedings thereon be affected, by reason of a defect or imperfection in matter of form which does not tend to the prejudice of the substantial rights of the defendant upon the merits." The indorsement has nothing to say to the substance of the charge made by an indictment. It is required for the purpose of authentication and the only right of the defendant is to be tried on an indictment the authenticity of which is beyond question. If there is doubt as to the authenticity of the indictments now under review, it fails to disclose itself, even to a microscopic search.

On December 3, 1925, during an absence from court of Mr. Foster Hannaford, the foreman of the grand jury, nothing appearing at the moment to indicate how long his absence would continue, the court appointed Mr. W. R. Cammack as "acting foreman." That certainly made him foreman for the time being. In that capacity he indorsed the indictments. It is not to be supposed that the legislature in providing for the appointment of foremen intended to subject the deliberations of a grand jury to inevitable interruption and delay because of the temporary or repeated absence of the foreman first appointed. So the appointment of a successor, temporary or otherwise, cannot be made dependent for its validity upon the formal discharge or excuse by the court of the foreman first appointed. It would be the extreme of absurdity to invalidate an indictment simply because a temporary foreman, appointed by the court, happened to sign the indorsement. No such objection can be permitted so long as the authenticity of the indictment is clear and the purpose of the statute in that respect accomplished. Here the record discloses the appointment of Mr. Cammack as acting foreman to serve during the absence of Mr. Hannaford. Both the absence of Mr. Hannaford and the appointment of Mr. Cammack to act in his place are of record. The indictments in question were indorsed by

Mr. Cammack while he was so acting, that is, while he was actually foreman of the grand jury.

2. The next claim for defendant is that the grand jury had no power to reindict him without a formal resubmission by order of court. Counsel for defendant place great reliance on State v. Young, 113 Minn. 96, 129 N. W. 48, Ann. Cas. 1912A, 163. There, the defendants had been adjudged guilty of contempt because of charges made by them against a grand jury then in session. The charges were based wholly upon a matter concerning which the jury had already reported to the court that no indictments were found. The case was therefore decided upon the ground that the "petition," which otherwise might have been contemptuous, was not so because it did not concern "a pending cause." There was no suggestion that the original accusations had been reopened before the grand jury, or were to be reopened, upon resubmission by the court or otherwise.

So it appears that the references made, arguendo, to the "jurisdiction" and "authority" of the grand jury did not go directly to the one thing for decision and principally in the mind of the court. The point of the case is that the charges of the defendants "concerned a past transaction" and so did not "come within the rule applicable to a pending proceeding." The best evidence that there was no intention to carry the effect of the decision farther or to touch the problem of the present case is that in Storey v. People, 79 Ill. 45, 22 Am. Rep. 158, which is the precedent approved and followed, the question is not mentioned, and the court had no occasion to consider, when and under what circumstances the authority of the grand jury terminates with respect to a given accusation.

True, it is said in the opinion in the Young case that: "There can be no substantial distinction, so far as concerns a termination of the authority of the grand jury, between a case where an indictment is returned and one where the jury reports no indictment as the result of their consideration of the charge. In either case, in the absence of express directions from the court, the authority of the jury ceases with the report." That dictum can apply only to cases where an order of resubmission is required by statute. But we have no statute making formal resubmission generally prere-

quisite to reindictment. There is nothing at all in the statute to indicate that, where an indictment is pending, the same or a subsequent grand jury cannot on its own motion reindict on the same charge. At common law and under our statute, grand juries are inquisitorial bodies "to inquire as to public offenses committed or triable in the county." Section 10603, G. S. 1923. The restrictions upon the manner of their inquiry are general and few. As will presently appear, charges cannot be resubmitted to them in some cases without an order of court, but that is because of certain statutory provisions, in their nature special and restrictive upon matter which is otherwise general and without restriction. So they must be confined to their stated subject matter and their restrictive force not extended by unnecessary implication. They "cannot  *  *  * be extended and made to apply to cases other than those expressly included." State v. Lightheart, 153 Minn. 40 (43), 189 N. W. 408.

One such restriction may be found in section 10637, G. S. 1923, and it may prevent a resubmission without an order of court where a charge has been once considered by a grand jury but without an indictment. State v. Young, supra. Section 10692 provides that, if a demurrer to an indictment is allowed, the judgment shall be final unless a resubmission be directed by the court. (In the instant case the demurrer was disallowed and of course that section does not apply). Section 10725, G. S. 1923, authorizes the dismissal of an indictment by the court on its own motion or that of the county attorney. In such a case no resubmission by order is prerequisite to reconsideration. Concededly there is no objection to the finding or pendency of concurrent indictments against the same defendant on the same charge. State v. Monroe, 142 Minn. 394, 172 N. W. 313; State v. Summerland, 155 Minn. 395, 193 N. W. 699; State v. Gut, 13 Minn. 315 (341); 16 C. J. 406. So it is difficult to see any objection to successive indictments on the same charge. So long as a defendant cannot object to the duplication of indictments, it certainly is immaterial whether they are simultaneous or successive.

In U. S. v. Thompson, 251 U. S. 407, 40 Sup. Ct. 289, 64 L. ed. 333, the trial judge had taken the position that a failure to indict

prevented a resubmission to another grand jury without leave of court. That position was declared untenable by the Supreme Court and this proposition established:

"That the power and duty of the grand jury to investigate is original and complete, susceptible of being exercised upon its own motion and upon such knowledge as it may derive from any source which it may deem proper, and is not therefore dependent for its exertion upon the approval or disapproval of the court; that this power is continuous, and is therefore not exhausted or limited by adverse action taken by a grand jury or by its failure to act, and hence may thereafter be exerted as to the same instances by the same or a subsequent grand jury."

That case and the authorities cited by Mr. Chief Justice White show conclusively that, in the absence of statute, the power of the grand jury to investigate and indict is not limited by such judicial discretion as may be exercised by the granting or denial of orders of resubmission. State v. Reinhart, 26 Ore. 466, 38 Pac. 822; State v. Collis, 73 Iowa, 542, 35 N. W. 625; Marshall v. State, 84 Ark. 88, 104 S. W. 934. On this point, see also the authorities cited under the next subdivision of this opinion.

3. The final proposition for defendant is that the new indictments are invalid because returned without re-examination of the original witnesses or the taking of additional evidence. The very point was held not well taken in State v. Peterson, 61 Minn. 73, 63 N. W. 171, 28 L. R. A. 324, followed in U. S. v. Kimball (C. C.) 117 F. 156, on the proposition that "repeated indictments may be found on the same evidence against the same persons." To the same effect are Commonwealth v. Woods, 76 Mass. (10 Gray) 477, Creek v. State, 24 Ind. 151; State v. Clapper, 59 Iowa, 279. Particularly in point is Whiting v. State, 48 Oh. St. 220, 27 N. E. 96. The first indictments were still pending, which is the situation in the instant case. The court said:

"The witnesses to the transaction having been once properly sworn and sent to the grand jury, there is nothing in the reason of things, why the evidence obtained upon their examination, could

not be acted on at any time during the session of the grand jury, for a purpose within its jurisdiction. The finding of the first indictment, could not exhaust its powers concerning the matters inquired of. All the proceedings of a grand jury may be regarded as *in fieri* until its final adjournment. And, hence, the grand jury in this case, had the power upon the same evidence to find another indictment, with the same or different counts, if in its judgment, the administration of justice required it. It will not infrequently happen that, for some defect in the indictment presented, or for the want of counts that should have been inserted to meet the possible aspects of the testimony when the accused comes to be tried upon the indictment, it is prudent to present a new indictment, adapted to such contingencies, leaving the prosecutor to nolli [sic] the first one, as was done in this case. And, in such case, to require the witnesses to be again subpoenaed, sworn and sent to the grand jury for re-examination, would be a requirement of no value whatever to the accused, and unsupported by any reason."

The whole matter is well put in Thompson v. U. S. 120 C. C. A. 575, 578, 202 F. 401, 404, 47 L. R. A. (N. S.) 206:

"We may well wonder why it should ever have been held otherwise, as no substantial reason is apparent why a grand jury after having once found an indictment which is discovered to be defective in form may not, upon the information which it has acquired, and with the same conviction, based upon that information, that the defendant should be brought to trial, present a second indictment for the same offense."

We do not overlook the argument for defendant that with respect to his reindictment he had a right to challenge the grand jurors because of the adverse state of mind resulting from their first investigation of the accusation against him. There is nothing in the point. It amounts to a claim that grand jurors are subject to challenge because of the very information acquired in the performance of their duty, in other words, that if evidence properly taken convinces a grand jury that a true bill should follow, that very state of mind subjects the jurors to a challenge which should prevent the

fulfilment of their function and duty. So the proposition cannot survive its own statement. The right to challenge grand jurors for bias goes to conditions existing when they are sworn, or at least to the result of influences wholly extraneous to the information that comes to them properly in the performance of their duty.

It appearing that both indictments are unobjectionable upon any of the grounds urged against them, no error was committed in sustaining them. All of the questions certified are answered in the negative.